**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON**

**CIVIL ACTION NO. 07-186-DLB**

**SCOTT STUDER, ET AL.**                                         **PLAINTIFFS**P

vs.            **MEMORANDUM OPINION AND ORDER**

**A PLUS BENEFITS, INC., ET AL.**                           **DEFENDANTS**

\*    \*    \*    \*    \*

Plaintiffs, Susan and Scott Studer, filed the instant action against A Plus Benefits, Inc. ("A Plus") and The A Plus Benefits, Inc. Employee Medical Plan ("the Plan") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), seeking review of A Plus's decision to deny coverage for medical expenses related to an accident suffered by Scott Studer on July 14, 2006.

Before the Court are the parties' cross-motions for judgment on the administrative record (Docs. #52, 53), Plaintiffs' Motion to Strike Exhibit A to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Reverse the Administrative Decision (Doc. #58), and Defendants' Motion for Oral Argument (Doc. #62). All three motions have been fully briefed (Docs. #56, 57, 59, 60, 61, 63, 64, 65), and are ripe for review. For the reasons set forth below, because Defendants' determination that Scott Studer's injuries were exempt from coverage under the Plan's "Occupational injury or illness" Exclusion was not arbitrary and capricious, Defendant's Motion to Affirm the Administrative Decision (Doc. #53), is **GRANTED**, and Plaintiff's Motion to Reverse the Administrative Decision (Doc. #52), is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As an employee of 3 Form Solutions, a Utah corporation which carries employee medical insurance with Defendant A Plus Benefits, Inc., Susan Studer and her husband Scott are provided health care coverage through the A Plus Benefits, Inc. Employee Medical Plan. The Plan, which is self-funded and administered by A Plus Benefits, Inc., is governed by ERISA.

In June 2006, Scott Studer ("Studer"), a self-employed carpenter and owner of StuderBaker Builders, L.L.C., was hired to construct a barn on private property located in Foster, Kentucky. On July 14, 2006, after Studer had stopped working on the barn for the day and was in the process of putting away his tools, a fast-moving storm swept over the work site. Studer was in the process of making his way to his vehicle when a sudden, strong gust of wind caused the framed structure of the barn on which he had previously been working to collapse on top of him.

As an immediate result of the accident, Studer suffered severe injuries to his face and right leg, including a fractured right femur, a fractured right tibia-fibula, and a fractured pelvis. Studer was taken by ambulance, first to St. Luke Hospital in Forth Thomas, Kentucky, then to the trauma center at University Hospital in Cincinnati, Ohio, where he underwent two surgeries to his right leg. Studer was released from the hospital on July 27, 2006.

Following his return home, Studer developed several complications relating to his surgery, including post-operative deep vein thrombosis that progressed to pulmonary embolus. In addition, because he was not responding favorably to physical therapy, in November, 2006, Studer underwent knee manipulation surgery to increase the range of

motion in his right leg. Unfortunately, Studer developed complications from this surgery as well: a hematoma developed in his right thigh requiring irrigation, debridement, and evacuation. Studer underwent repeat knee manipulation surgery on December 12, 2006. Due to his hospital stay, initial surgeries, and surgeries due to complications, Studer has accumulated approximately $200,000 in medical expenses.

On October 25, 2006, Everest Administrators, Inc. ("Everest"), the third-party claims administrator of the Plan, mailed Studer an explanation of benefits statement (EOB) indicating that the Plan would not pay Studer's medical expenses related to the July 14th accident because the it provides "[n]o coverage for occupational illness or injury." (Doc. #43, AP 0311). However, prior to her receipt of the October 25th EOB, and in response to calls from several medical providers informing her that the Plan was refusing to pay Studer's medical bills, Susan Studer called Everest to inquire. In response to Susan's assertion that her husband's injuries should be covered by the Plan, an Everest customer service representative told Susan of her right to appeal the Plan's denial of coverage, and asked her to put her concerns in writing, as all the information about the accident currently in possession of the Plan indicated that the accident was occupational, and therefore exempt from coverage. (Doc. #43, AP 0125).

Studer subsequently appealed the denial of his claims through an undated letter which reads in its entirety:

> Explanation of accident that occurred on 7/14/06. Work was complete for the day it was after hours, I was walking past the building to my vehicle to return home, a strong storm with destructing winds came upon us quickly, the storm had forcefully pushed the building to the ground, and I unfortunately could not escape.

(Doc. #43, AP 0155). Everest responded, sending the Studers a detailed letter, dated

3

November 22, 2006, explaining that representatives of Everest had reviewed Studer's claims in consultation with members of the Plan's workers' compensation team, and had determined that "plan provisions do not allow payment of bills related to injuries you sustained at your work site, nor the resulting complications." (Doc. # 43, AP 0156). A copy of the relevant plan exclusion was included with the letter. That exclusion, titled "Occupational injury or illness" provides:

> Expenses for which a Participant is entitled to benefits under a Workers Compensation or Occupational Disease law or any similar law, or would be entitled to such benefits had coverage been purchased. This exclusion additionally applies to any *illness* or *injury* sustained while engaged in an occupation, trade, or profession regardless of whether or not Workers Compensation benefits are available.

(Doc. #43, AP 0826, 0782 (emphasis in original)). The Studers, through an attorney, again challenged the Plan's denial of benefits and, in a letter dated March 22, 2007, formally requested that the denial be reviewed as provided by the Plan.

The Plan reviewed Studer's claims, and Everest issued a second denial letter on April 9, 2007. (Doc. #43, AP 0165). Again, the denial letter emphasized the Plan's reason for denial: "Plan provisions are simple and straight forward. No benefits are paid for injuries that would have been covered under Workers Compensation Insurance had a policy been purchased, nor for any injuries sustained at the work site." (Doc. #43, AP 0165).

On June 7, 2007, the Studers requested, pursuant to Plan provisions, that a final decision be issued regarding Studer's claims. (Doc. #43, AP 0172). The Plan performed another review, communicating its decision to the Studers through a letter dated June 12, 2007:

> The work related injury exclusion, as it is worded in the plan document, clearly applies. Mr. Studer's decision not to purchase work related insurance

4

does not obligate the Plan to accept this liability when the Plan specifically states that it will not do so. This constitutes the second and final appeal that the Plan will consider on this case.

(Doc. #43, AP 0168). On November 16, 2007, the Studers filed the instant action against A Plus, Everest[1], and the Plan seeking recovery of benefits, prejudgment interest, and attorney's fees and costs. (Doc. #1).[2]

## II. ANALYSIS

### A. Standard of Review

It is well-established that federal courts review a plan administrator's denial of benefits *de novo*, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a plan administrator is granted such discretionary authority, this Court reviews a decision to deny benefits under "'the highly deferential arbitrary and capricious standard of review.'" *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

In this case, the language of the Plan expressly grants to A Plus the discretionary authority both to determine participant eligibility for benefits and to construe the terms of the plan: "The Company will have the responsibility to make all final determinations regarding claims for benefits under the Plan, and will have the right to interpret the terms

---

[1] As any possible benefits due the Studers would be paid by the Plan, and by extension A Plus as the entity that funds the plan, Everest was dismissed from this case on June 11, 2008. (Doc. #40).

[2] The Complaint was subsequently amended on December 5, 2007, to include additional factual allegations against Everest. (Doc. #7).

and provisions of the Plan." AP 0795, 0839. This language constitutes a sufficient grant of authority to trigger application of the arbitrary and capricious standard of review. *See, e.g., Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845-46 (6th Cir. 2000) (holding that arbitrary and capricious standard applied when plan provided that the plan administrator "shall have the discretionary authority to determine eligibility for benefits or to construe the terms of the plan").

Plaintiffs, however, assert that *de novo* review remains appropriate - despite the express grant of discretionary authority contained in the Plan - because the decision to preclude Studer's injuries from coverage was made not by A Plus, but by Everest. Relying upon *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006), Plaintiffs contend that because A Plus "functionally delegated all meaningful discretion" over Studer's claim to Everest, Everest became a "functional fiduciary" under ERISA, thereby rendering inapplicable the arbitrary and capricious standard of review.

Despite Plaintiffs' reliance upon *Briscoe*, that case is inapplicable to the case at bar for two reasons. First, *Briscoe* concerned a claim of breach of fiduciary duties under 29 U.S.C. § 1109, not an appeal of a denial of benefits under 29 U.S.C. § 1132. Second, the court in *Briscoe* did not address how the "functional fiduciary" status of a third-party claims administrator might impact the standard of review. *See Samaritan Health Center v. Simplicity Health Care Center*, 516 F. Supp. 2d 939, 949 (discussing *Briscoe*: "Whether an entity can be considered a fiduciary for purposes of assessing a participant's claims that the fiduciary has breached its duties without express delegation of authority . . . differs from allowing an implied delegation to invoke deferential review . . ."). Therefore, this Court declines to undertake an analysis of whether Everest could be considered a "functional

fiduciary" under ERISA, as such a determination is unrelated to the question of the appropriate standard of review.

Although uncited by any party, the Court is aware of *Sanford v. Harvard Industries, Inc.*, 262 F.3d 590, 594-95 (6th Cir. 2001), in which the Sixth Circuit Court of Appeals held the *de novo* standard of review applies when an unauthorized body makes the decision to deny a benefits claim, regardless of the degree of discretionary authority provided in the plan. *Id.* at 597. In *Sanford*, a retired employee sued his former employer challenging the employer's decision that he had been mistakenly granted early retirement and would have to return to work in order to qualify for retirement benefits, and revoking the retirement benefits he had already begun to receive. *Sanford*, 262 F.3d 592. The district court concluded that the employer's decision to rescind the retiree's benefits was made in violation of plan procedures as the plan gave a Board of Administration the discretionary authority to decide the retiree's eligibility for benefits, but the decision to rescind his benefits was made by the employer instead. *Id.* at 596-97. Because the benefits decision was made in contravention of plan procedures, the district court concluded that it was appropriate to review the employer's denial of benefits *de novo. Id.* at 596. On appeal, the Sixth Circuit upheld, as not clearly erroneous, both the district court's factual finding that the employer violated the plan procedures by allowing an unauthorized body to make the final benefits decision, and its legal conclusion that benefits decisions by unauthorized bodies receive no deference. *Id.* at 596-97.

Although the holding of *Sanford* appears to support the Plaintiffs' arguments for *de novo* review, the present case is distinguishable. First, Plaintiffs have not argued that Everest was an unauthorized decision-maker. Rather, Plaintiffs only claim that A Plus

7

delegated to Everest the *de facto* authority to engage in an independent assessment of Studer's claims. At no time have Plaintiffs contended that such a delegation of authority was in violation of the terms of the Plan. Indeed, such an assertion would be contrary to the language of the Plan, which expressly contemplates the employment of a third-party claims administrator to administer the Plan, (Doc. #43, AP 0763, 0806). The Plan states that the claims administrator will "process claims, answer Participants' questions, provide forms and identification cards, and generally administer the day-to-day activities of the Plan," (Doc. #43, 0790, 0834), and directs participants who wish their claims to be reviewed to submit that request "in writing to the *claims administrator*," (Doc. #43, AP 0795, 0839 (emphasis in original)). These provisions support the inference that any initial benefits decisions made by Everest were authorized by the Plan documents.

Second, even if Everest was deemed to be an unauthorized decision-maker under the Plan, the administrative record does not support the conclusion that Everest alone made the decision to deny benefits to Studer, or than any actions taken by Everest violated the provisions of the Plan. Rather, the administrative record shows that employees of Everest waited for A Plus to weigh in on whether to deny Studer's claims before processing any denials. On July 21, 2006, Susan Studer called Everest with information that her husband was in the hospital due to an accident involving a building collapse at a job site. (Doc. #43, AP 0130). Later that same day, Susan called Everest again because the hospital had just informed her that Studer's medical expenses might not be covered due to the work-related nature of his injuries. (Doc. #43, AP 0129). In response to her concerns, the Everest representative told Susan that Everest would have to learn the complete circumstances of the accident before making any decision on whether benefits

would be payable or not. *Id.* Three days later, a representative from Everest called A Plus to "see what they think about [Studer's] situation," and was told that "if [the accident] happened at work no matter if they were done working or not it is work related." (Doc. #43, AP 0113, 0114). The record indicates that this information regarding Studer's benefits eligibility came from an employee of A Plus who consulted with that entity's workers' compensation department before responding to Everest's request for input. (Doc. #43, AP 0114). It was not until after A Plus has indicated that Studer's claims should be denied, and after Everest has received a detailed account of the accident, that it began to deny payment of medical expenses related to Studer's accident. (*See* Doc. #43, AP 0079). Therefore, unlike *Sanford*, where it was clear that the decision to rescind benefits had been made contrary to plan provisions, here the decision to deny Studer's claims appears to have been made by or at the direction of the plan administrator, and in accordance with the procedural provisions of the Plan.

Indeed, the exact actions taken by Everest in processing Studer's claims are detailed in the Plan documents and the Administrative Services Agreement which emphasize that A Plus retains the responsibility and discretion to make "all final determinations regarding claims for benefits under the Plan," (Doc. #43, AP 0795, 0839), and that Everest is empowered only to provide services which are "administerial in nature" and to "process and pay benefits in accordance with the written provisions of the Plan," (Doc. #43, AP 0753).[3]

---

[3] Plaintiffs make much of the fact that representatives of Everest - as opposed to A Plus - communicated with Plaintiffs during the pendency of Studer's claims, and sent the letters denying Studer's claims initially, and after review. As discussed above, however, this interaction between Plaintiffs and Everest does not indicate, as Plaintiffs insist, that any discretion retained by A Plus was wholly delegated to Everest. On the contrary, all of the interactions cited by Plaintiffs are merely examples of Everest's day-to-day management of the Plan, which "administerial services" are detailed in the Plan documents. (Doc. #43, 0790,

9

Therefore, as the language of the Plan expressly grants discretionary authority to A Plus, and the record does not support - nor do Plaintiffs assert - that the decision to deny benefits was made by an unauthorized body, the denial of benefits will be reviewed under the arbitrary and capricious standard of review.

### B. The Plan's Decision to Deny Benefits Was Not Arbitrary and Capricious

Under the highly deferential arbitrary and capricious standard of review, this Court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). When reviewing a denial of benefits under this standard, this court may not "substitute its judgment for that of the administrator," *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 625 (6th Cir. 2007) (Boggs, C.J., concurring), but must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants, *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Plaintiffs rightly point out the existence of a conflict of interest on the part of A Plus, as it both administers the Plan and is ultimately for paying the claims arising thereunder. The existence of this conflict, however, does not change the standard under which the denial of benefits is reviewed; rather, the conflict of interest is considered as one factor in determining whether the decision to deny benefits was arbitrary and capricious. *McCartha*

---

0834).

v. *Nat'l City* Corp., 419 F.3d 437, 443 (6th Cir. 2005); *Davis*, 887 F.2d at 694.

After a careful examination of the administrative record, the Plan's decision to deny coverage for expenses related to Studer's July 14, 2006 accident was reasonable in light of the clear exclusionary language of the Plan's "Occupational injury or illness" exclusion, even after A Plus' conflict of interest is taken into account.

### 1. The Language of the "Occupational Injury and Illness" Exclusion Is Not Impermissibly Ambiguous

Plaintiffs argue that reversal of the administrative denial of benefits is warranted due to the "impermissibly ambiguous" language of the Plan's "Occupational injury or illness" exclusion, which Plaintiffs contend not only defeats their reasonable expectations, but also violates public policy. This argument is misplaced, however, as there is simply no ambiguity in the terms of the exclusion.

Under its terms, the "Occupational injury and illness" exclusion denies benefits to two distinct types of claims: 1) those claims that could be covered by a workers' compensation law, regardless of whether the participant (or his employer) has purchased workers' compensation insurance; and 2) those claims that arise out injuries or illness sustained while the participant was engaged in any occupation, trade, or profession, regardless of whether workers' compensation benefits are available. *See Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 633 (6th Cir. 2003) (holding as nonambiguous a similar occupational injury exclusion). The exclusion denies coverage to *all* work-related injuries - irrespective of whether workers' compensation coverage has been purchased, or whether the participant would even be entitled for workers' compensation benefits for the injury in question. Although broad, the language of the exclusion is not

ambiguous, and put Plaintiffs on notice at the time of their enrollment that the Plan would not pay benefits for any work-related injury or illness. Having concluded that the language of the exclusion is clear, this Court need not reach Plaintiff's arguments concerning their reasonable expectation of coverage, benefits guaranteed under the Plan, and public policy, as all three are premised upon a finding of linguistic ambiguity.

### 2. There Was Sufficient Evidence in the Administrative Record Before A Plus to Decide That Studer's Claims Were Excluded from Coverage Under the Plan

Plaintiffs' final argument for reversal of the administrative denial of benefits is that A Plus has failed to establish that the "Occupational injury and illness" exclusion applies to Studer's claims. Specifically, Plaintiffs' assert that the medical reports in the administrative record do not establish that Studer's injury was work-related, and that Studer's injuries would be compensable under Kentucky workers' compensation laws.

When considering these arguments - especially those related to interpretation of Kentucky law - the Court must keep in mind the constraints imposed by the standard of review. It is not for this Court to decide whether A Plus correctly decided to deny benefits to Studer, but rather to decide merely whether there was sufficient evidence in the administrative record before A Plus to decide that Studer did not qualify for benefits due to the Plan's exclusion. *Buha v. United Food & Commercial Workers Int'l Union-Indus. Pension Fund*, 77 F. App'x 347, 350 (6th Cir. 2003). If sufficient evidence exists to uphold A Plus' decision, then this Court must do so. *Id.*

"An ERISA plan, not the participant, has the burden of proving an exclusion applies to deny benefits." *McCartha*, 419 F.3d at 443 (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002)). However, the administrative record supports the conclusion that A Plus' decision to deny benefits to Studer based on the "Occupational injury and illness" exclusion was reasonable.

The record reflects that every account of Studer's accident - including the written account submitted by Studer to Everest - states that the accident occurred on the job site.[4] *(See, e.g.* Doc. #43, AP 0187 (St. Luke Emergency Room Physician Report which states that Studer was brought to the hospital "after a house from that he was working on blew over and fell on top of him around 4 p.m. today); AP 0184-86 (University Hospital Emergency Department Physician Report states that Studer "reports he was at work when this injury occurred"); AP 0130 (record of Susan Studer's call to Everest wherein Susan summarized the accident: "Building collapsed on him, he was on the job site at the time. They had stop [sic] working for the day and were in the process of putting away their tools

---

[4] Plaintiffs attempt to characterize the administrative record as "inconclusive" regarding whether Studer's injuries were related to his employment by highlighting a number of Health Insurance Claim Forms submitted to Everest by Studer's health care providers in which the box "no" is checked in response to the question :"Is patient condition related to employment (current or previous)." (*See, e.g.*, Doc. #43, AP 500). In addition, Plaintiffs allege that because the claim forms "contradict" the Plan's assertion that the accident was work-related, the Plan cannot meet its burden of proving that the Plan exclusion applies to Studer's injuries.

This argument is unpersuasive given the low probative value of the information contained in the claim forms. Although some of the forms have been signed by Studer's physicians, the forms do not indicate 1) who filled them out, and 2) whether that person had access to Studer's medical records, or had spoken to Studer regarding the cause of his injuries. Indeed, all of the forms cited by Plaintiffs do not even indicate that Studer's injuries were caused by any kind of accident as the box "no" has been checked in response to the question "Is patient's condition related to other accident?" (*See, e.g.*, Doc. #43, AP 500).

In considering Plaintiffs' arguments regarding the significance of the claim forms, and examining the forms themselves, the Court has not consulted or considered the "NUCC Instruction Manual" attached as Exhibit A to Defendants Memorandum in Opposition to Plaintiffs' Motion to Reverse the Administrative Decision. (Doc. #57). Therefore, as this Court has not looked beyond the administrative record in considering the parties arguments for and against affirmance of the administrative denial of benefits, it is not necessary to strike the exhibit and Plaintiffs' motion to that effect (Doc. #58) will be **DENIED**.

when the gust of wind came up and this all happened.")).  The first denial letter establishes that these uncontroverted accounts formed the basis of the Plan's denial of benefits: "[A]ny injury on the work site is considered work related, whether or not you were actually working at the exact time of the accident. . . . Plan provisions do not allow payment of bills related to injuries you sustained at your work site, nor the resulting complications."  (Doc. #43, AP 0156).

Despite the evidence in the administrative record that Studer's injuries occurred at work, Plaintiffs insist that the Plan's denial of benefits was unreasonable because it did not make a sufficient investigation into whether - given the fact that Studer had finished working for the day and was putting away his tools - his injuries would be compensable under Kentucky's workers' compensation laws.  The record indicates that prior to issuing a final decision regarding Studer's claims, Everest, on behalf of A plus and as part of its processing of Studer's claims, made inquiries regarding both Studer's eligibility to purchase workers' compensation insurance in Kentucky and whether the fact that he was packing up his tools would preclude his recovery of workers' compensation benefits.

On November 22, 2006, prior to the issuance of the first denial letter, an Everest representative called the Kentucky Labor Commission "to find out what Kentucky rules are regarding worker's compensation and if coverage had been purchased, if Scott Studer's injury would have been covered."  (Doc. #43, AP 0065).  Specifically, the representative asked "if [the Kentucky Labor Commission] would deny a claim when there was [workers' compensation] insurance because the guy had stopped working for the day and was headed home," and was told "they apparently would not deny the claim based on the fact that work had ended for the day."  (Doc. #43, AP0065-66).

14

Following Studer's response to the first denial letter, in which he stated that he was not required to purchase workers' compensation insurance and was therefore not subject to Kentucky's workers' compensation laws, a representative of Everest re-contacted the Kentucky Labor Commission to see whether it was possible for an independent contractor without employees to purchase workers' compensation insurance. (Doc. #43, AP 0023). The Everest representative learned that such coverage was available and was given the number of Kentucky Employers Mutual Insurance (KEMI), a private Kentucky workers' compensation insurance carrier. *Id.* She then called KEMI and spoke with an underwriter who confirmed the information provided by the Kentucky Labor Commission: "a single contractor who does his own work and does not hire any employees may purchase [workers' compensation] insurance to cover himself even though Kentucky State Law does not require him to do so." (Doc. #43, AP 0024).

In light of the evidence in the administrative record regarding the location and circumstances of the accident and the information received from the Kentucky Labor Commission and KEMI, the decision to deny benefits to Studer was supported by substantial evidence and reasonable under the terms of the Plan. As Studer's injuries occurred on the job site, and A Plus had confirmed that Studer could have purchased personal workers' compensation insurance coverage, it was not unreasonable for A Plus to conclude that Studer's injuries did not qualify for coverage due to the first sentence of the Plan's "Occupational injury or illness" exclusion. Therefore, as the denial of benefits was neither arbitrary nor capricious, the decision of the Plan administrator must be upheld.

### III. CONCLUSION

Therefore, for the reasons stated herein,

**IT IS ORDERED AS FOLLOWS:**

1. Plaintiffs' Motion to Reverse the Administrative Decision (Doc. #52) is hereby **DENIED**;

2. Defendants' Motion to Affirm the Administrative Decision (Doc. #53) is hereby **GRANTED**;

3. Plaintiffs' Motion to Strike Exhibit A to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Reverse the Administrative Decision (Doc. #58) is hereby **DENIED**;

4. Defendants' Motion for Oral Argument (Doc. #62) is hereby **DENIED**;

5. This matter is hereby **STRICKEN** from the docket of the Court;

6. A Judgment affirming the administrative decision will be entered contemporaneously herewith.

This 18th day of May, 2009.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-07-186-MOO.wpd